2024 BNH 004	Note:	This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                      Bk. No. 22-10540-BAH
                                                                                                              Chapter 13
Marc E. Dionne, II,
          Debtor

*Kathleen E. McKenzie, Esq.*
*Raymond, DiLucci, P.A.*
*Concord, New Hampshire*
*Attorney for Debtor*

*Matthew J. Delude, Esq.*
*Rimmer Piper Eggleston & Cramer PC*
*Manchester, New Hampshire*
*Attorney for Bridget Heard and Jeremy Burrington*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

Creditors Jeremy Burrington and Bridget Heard (the "Creditors") filed a Motion to Dismiss Case for Ineligibility to File Chapter 13 Petition on June 9, 2023 (Doc. No. 82) (the "Motion to Dismiss"), on the grounds that the debtor, Marc Dionne (the "Debtor") is ineligible to be a Chapter 13 debtor under 11 U.S.C. § 109(e).  The Debtor timely objected to the Motion to Dismiss on July 26, 2023 (Doc. No. 92).  The Court held a hearing on the Motion to Dismiss on March 7, 2024, and took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The stipulated record establishes the following.[1] The Debtor filed his voluntary petition under chapter 13 of title 11 of the United States Code ("Chapter 13") on October 31, 2022 (the "Petition Date"). For several years prior to that, he was a self-employed landscaper. At some point in the years preceding his bankruptcy case, the Debtor began receiving monetary assistance from his parents because he was unable to pay his expenses on his own.[2] The Debtor and his parents understood that all of the amounts the Debtor received during this time were loans that the Debtor would eventually pay back. During discovery, the Debtor provided loan records indicating that between the beginning of 2020 and the Petition Date, the Debtor received $68,821.00 from his mother and approximately $26,677.49 from his father.[3] The Debtor

---

[1] After several continuances and some discovery, this matter was scheduled for evidentiary hearing on March 7, 2024. However, at the commencement of the hearing, the parties stipulated to what they believe are all of the relevant facts, which in their view made an evidentiary hearing unnecessary. As a result, the stipulated record in this case derives from two sources: an uncontested statement of facts jointly filed by the parties as part of their Joint Pre-Hearing Statement (Doc. No. 137) and two other matters to which the parties stipulated on the record in open court on March 7, 2024:

    1. The Petition Date is the only relevant date for testing the Debtor's eligibility to be a Chapter 13 debtor under 11 U.S.C. § 101(30).

    2. The only source of monetary funds for the Court to consider as potential "income" for Chapter 13 eligibility purposes is the loans from the Debtor's parents.

To the extent that the stipulation regarding the "only relevant testing date" is a matter of law, not fact, the Court deems that to be a waiver of any arguments that the relevant testing date may be a date other than the Petition Date.

[2] In the stipulated record, the parties agree that the Debtor began receiving contributions from his parents in 2021. However, the record of loans the Debtor received from his parents in the years preceding his bankruptcy case indicates that he received money from his parents beginning in 2020. See Creditor's Ex. List, Ex.1, Doc. No. 136-1, 10, and Ex. 3, Doc. No. 136-3, 10.

[3] The Debtor's Objection to the Motion to Dismiss includes two slightly different records regarding how much he received from his father prepetition. See Creditor's Ex. List, Ex. 3, Doc No. 136-3, 10 and 12. One of those records, containing numbers handwritten on lined paper, indicates that the Debtor received $26,677.45 from his father prepetition. See Creditor's Ex. List, Ex. 3, Doc. No. 136-3, 10. The other record, which is in table format containing typed-out numbers, indicates the Debtor received $26,677.49 from his father prepetition. See Creditor's Ex. List, Ex. 3, Doc. No. 136-3, 12.

continued to receive contributions from his parents after the Petition Date.[4] The Debtor's parents agreed to continue making contributions in the form of loans to the Debtor on an "as needed" basis.

## III. DISCUSSION

Not all individuals are eligible for Chapter 13 relief. 11 U.S.C. § 109(e) lays out the parameters of Chapter 13 eligibility. It states that only "an individual with regular income" may be a Chapter 13 debtor. 11 U.S.C. § 101(30) defines "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13…." Congress intended to broadly define "individual with regular income" to encompass both traditional and non-traditional sources of income. In re Baird, 228 B.R. 324, 327-28 (Bankr. M.D. Fl. 1999); In re Murphy, 226 B.R. 601, 604 (Bankr. M.D. Tenn. 1998). The parties agree that it is the Debtor's burden to show that he was an "individual with regular income" on the Petition Date.

### A. Classification of Contributions

Resolution of the Motion to Dismiss under the applicable case law depends, in part, on whether the Court classifies the contributions from the Debtor's parents as loans or gifts. Throughout this case, the Debtor has struggled to stick to a single classification of the contributions. The Debtor initially listed the contributions as "gifts" on his Statement of

---

[4] The parties agreed during the March 7, 2024, hearing that each of the Debtor's parents provided additional money to the Debtor postpetition without Court approval. To the extent the contributions from the Debtor's parents are loans and not gratuitous contributions, 11 U.S.C. § 364 required the Debtor to move for Court approval to incur such additional postpetition debt, since the authority under § 364(a) to do so without a motion is limited to debt incurred in the ordinary course of a debtor's business, and there is no suggestion that the Debtor is engaged in business. The Debtor never filed such a motion at any point during this case.

3

Financial Affairs.⁵  In his objection, the Debtor stated he did this "to ensure that the record clearly reflect[ed] his family members were not creditors."⁶

During discovery, the Debtor shifted his position, framing the contributions as loans.  He amended, among other filings, his Statement of Financial Affairs to "clarify that the non-employment income was 'Financial Contributions from family members' instead of 'Gifts of money….'"⁷  The Debtor also amended Schedule E/F to add each of his parents as nonpriority unsecured creditors based on their prepetition contributions.⁸  Additionally, in response to the Creditors' interrogatories regarding his prepetition income, the Debtor stated that his parents "indicated they would continue to assist [the Debtor] financially until [he] found full time employment" and the Debtor and his parents "all understood that [the Debtor] would repay [his parents] when [he] had the financial ability to do so…."⁹

Finally, in his Memorandum of Law following submission of the stipulated record, the Debtor asserted that even though the Debtor claimed the contributions from his parents are loans, the terms of the loans are so informal that the Court should understand the contributions to be gratuitous.¹⁰  Thus, through several rounds of machinations, the Debtor attempts to end up exactly where he started: with several prepetition "gifts" from his parents and some promise to continue making such gifts after the Petition Date.

---

⁵ Statement of Financial Affairs, Doc. No. 19, 2.

⁶ Debtor's Objection. Doc. No. 92, 1.

⁷ Notice of Amendment, Doc. No. 108-2, 1.

⁸ Amended Schedules and Statements, Doc. No. 108-3, 17-18.

⁹ Creditor's Ex. List, Ex. 3, Doc. No. 136-3, 6.

¹⁰ See Debtor's Memorandum of Law, Doc. No. 144, 4-6.

The Debtor's changes in posture during the pendency of the Motion to Dismiss have required the Creditors to present new arguments throughout this matter.  The Creditors argue that, to the extent the Debtor's parents' contributions are gifts, the contributions could not constitute income sufficient to qualify the Debtor for Chapter 13 relief because the Debtor's parents do not have a legal obligation or financial interest in the Debtor's successful completion of his Chapter 13 Plan, and the proposed contributions are not sufficiently stable if they are on an "as-needed" basis.[11]  Alternatively, the Creditors argue that loans can never be income for Chapter 13 eligibility purposes and that, even if loans could be considered income, the contributions at issue here are not sufficiently stable to constitute income.[12]  In their latest Memorandum of Law, filed after the Debtor attempted to classify the contributions as gifts once again, the Creditors insist that the Debtor is barred from calling the contributions gifts because the stipulated record called the contributions "loans."[13]

Ultimately, it does not matter whether the Court classifies the Debtor's parents' contributions as loans or gifts.  The record and applicable case law clearly demonstrate that the contributions alone could not support Chapter 13 eligibility under § 109(e).

**B.  Classifying the Contributions as Gifts**

If the Court accepts the Debtor's latest argument that the contributions from his parents are essentially gratuitous, the Debtor cannot succeed.  There is a healthy body of case law for the proposition that gratuitous contributions may constitute sufficiently stable and regular income for a debtor to meet the requirements for Chapter 13 eligibility on the basis of such contributions alone.  However, that case law makes clear that the proposed contributors must manifest some

---

[11] See Creditor's Supp. Brief, Doc. No. 138, 4-5.

[12] See id. at 2-4.

[13] See Creditor's Mem. of Law, Doc. No. 147, 2-4.

combination of willingness, ability, duty, and commitment to make such contributions. Such manifestation could be in the form of an affidavit or testimony before the Court. See Murphy, 226 B.R. 601 (contributions from a debtor's friend and housemate constituted income under § 101(30) where the friend made a written unconditional commitment to provide the debtor with sufficient funds to fund her proposed Chapter 13 plan); In re Antoine, 208 B.R. 17 (Bankr. E.D.N.Y. 1997) (a non-filing spouse's contributions were sufficient to constitute income where the non-filing spouse signed an affidavit stating she would commit her entire salary to fund the proposed Chapter 13 plan and her salary was enough to make the plan payments). Other courts have relied upon a substantial history of continuous and sufficient contributions. See Singer Asset Fin. Co., LLC v. Mullins (In re Mullins), 360 B.R. 493 (Bankr. W.D. Va. 2007) (contributions from a debtor's non-filing spouse constituted income under § 101(30) where the non-filing spouse evidenced his commitment to contribute to the debtor by making contributions sufficient for the debtor to make all of her Chapter 13 plan payments to date). Additionally, some courts have speculated, and at least one court has found, that contributions from family or friends are sufficient to constitute income for Chapter 13 eligibility purposes where the contributor has a financial or legal interest in the debtor's successful completion of a Chapter 13 plan. In re Campbell, 28 B.R. 193 (Bankr. E.D.N.Y. 1984); see generally In re Porter, 276 B.R. 32, 39 (Bankr. Mass. 2002) ("As a general proposition, gratuitous payments to a debtor by his family members do not constitute income for Chapter 13 purposes, although exceptions exist, particularly where the contribution … is made pursuant to some contractual or legal obligation….").

      Other courts have found that gratuitous contributions were insufficient to constitute income for Chapter 13 eligibility purposes where some or all of the characteristics discussed above are lacking from the proposed contributor. See In re Norwood, 178 B.R. 683 (Bankr. E.D.

Pa. 1995) (proposed contributions from a debtor's mother and sister were insufficient to constitute income for Chapter 13 eligibility purposes where the record lacked any evidence of the mother's or the sister's commitment or ability to make the proposed contributions and the proposed contributions would only be on an "as needed basis"); In re Pichardo, No. 12-13015, 2013 WL 1352308 (Bankr. D.R.I. Apr. 3, 2013) (an alleged promise by a debtor's children to make up any shortfall in the debtor's Chapter 13 plan payments did not constitute income because there was no evidence that the children had legally committed themselves to make such payments).

 Here, the facts are more similar to the latter set of cases than the former.  The record fails to show any of the critical characteristics that courts have used to find that gratuitous contributions are sufficient to constitute income for Chapter 13 eligibility purposes.  Neither of the Debtor's parents testified or submitted an affidavit evidencing a commitment, ability, or duty to continue making contributions to the Debtor for the life of his Chapter 13 plan.  The Debtor admits that all payments were (and continue to be) on an "as-needed" basis.  See Norwood, 178 B.R. at 691 ("Contributions that are only available to [a d]ebtor when they are needed are by their very nature not stable and regular.").  Also, to the extent that it is still relevant in light of the parties' "testing date" stipulation, the docket in this case reflects a postpetition payment history for the Debtor that is less than perfect.  The Debtor has fallen behind on Chapter 13 plan payments twice in this case so far.[14]  Moreover, if the contributions are gifts, the Debtor's parents have no legal or contractual interest in the Debtor making his plan payments.

---

[14] The Chapter 13 Trustee filed two motions to dismiss for failure to make Chapter 13 plan payments.  Doc. Nos. 42 and 139.  The Court entered orders denying each motion to dismiss following resolutions between the Chapter 13 Trustee and the Debtor.  Doc. Nos. 104 and 150.  Each time, the Debtor fell behind two plan payments, leaving a plan payment arrearage of $1,602.00.  While the Debtor ultimately became current on both occasions, the fact that he fell behind helps with the determination of whether his parents' commitment arises to "regular and stable income."

Accordingly, to the extent the contributions are gratuitous, the contributions alone do not constitute regular and stable income sufficient to render the Debtor eligible for Chapter 13 relief.

### C. Classifying the Contributions as Loans

Taking instead the Debtor's Amended Schedules and Statements and part of the stipulated record at face value and treating the contributions as loans, as the Creditors insist that the Court must do, the Debtor still cannot succeed.  Bankruptcy courts have not clearly defined the outer boundaries of §§ 109(e) and 101(30), as those sections relate to postpetition loans that a debtor receives.  The parties do not cite, nor could this Court find, another case where a court had to decide whether a debtor is eligible for Chapter 13 relief based on an ongoing commitment from a third party to help the debtor fund his or her plan through unsecured postpetition loans.  In the First Circuit, the Bankruptcy Appellate Panel (the "BAP") faced the issue of whether a single prepetition loan constituted income for Chapter 13 eligibility purposes.  Pellegrino v. Boyajian (In re Pellegrino), 423 B.R. 586 (B.A.P. 1st Cir. 2010).  In Pellegrino, joint debtors argued that a prepetition loan from a friend enabling the debtors to make some plan payments constituted income sufficient to make the debtors "individual[s] with regular income."  The BAP disagreed.  Demurring on the question of whether a loan could ever constitute income for Chapter 13 eligibility purposes, the BAP found that the specific loan in that case, as the sole source of "income" for the debtors on the petition date, was insufficient to render the debtors "individual[s] with regular income" because the loan by itself would not enable the debtors to make *all* of their plan payments.

As the BAP demurred in Pellegrino, this Court need not decide today whether loans could ever be considered income for Chapter 13 eligibility purposes.  Even if a loan or series of loans could constitute income for Chapter 13 eligibility purposes, the facts of this case do not support a conclusion that the Debtor had sufficiently stable and regular income to make him an

8

eligible Chapter 13 debtor. The contributions from the Debtor's parents are the only source of "income" for the Court to consider for eligibility purposes. The only actual term the Debtor provided for the "loans" was that the Debtor's parents would provide funds on an "as needed" basis. While there are instances in which a borrower may take on debt in an amount that is not definite at the time of the agreement (e.g., a line of credit), there is no indication here that the Debtor had any idea how much he could borrow from his parents or, more importantly, how much his parents could afford to lend him to fund his plan. Contributions, whether gifts or loans, on such indefinite terms could not possibly be "stable and regular."

Additionally, perhaps the greatest obstacle that the Debtor has failed to overcome is how the loans would enable the debtor "to make payments under a plan under chapter 13." When a debtor obtains postpetition credit under the Bankruptcy Code, the loan is entitled to administrative expense priority. 11 U.S.C. §§ 364(b), 503(b). A Chapter 13 plan must provide for the full payment of all priority claims under 11 U.S.C. § 507, including administrative expense claims, unless the holder of such claim agrees to a different treatment. 11 U.S.C. §§ 1322(a)(2), 507(a). In addition to the fact that the Debtor never filed a motion to incur postpetition debt there is no indication from the record that either of the Debtor's parents (or any other priority claim holder in this case) agreed to accept less than the full amount of their claim as an administrative expense or to subordinate their claim to the payment of all other allowed unsecured claims.[15]

---

[15] There appear to be at least two other administrative expense claim holders in this case. The Court takes judicial notice of the fact that Alicia Dionne filed Proof of Claim 10-2, asserting a $28,195.00 priority claim on account of a domestic support obligation under § 507(a)(1). The Court additionally takes judicial notice of the fact that the New Hampshire Department of Tax Revenue Administration filed Proof of Claim 15-2, reflecting a $16,780.79 priority tax claim under § 507(a)(8).

In this context, the reason § 364 requires court approval of postpetition consumer debt seems clear. Treating the proposed postpetition contributions as administrative expenses, the mushrooming amount of those contributions would ultimately consume the entire stream of plan payments and make it so that even § 507 priority claims could not be paid in full, as § 1322(a)(2) requires. As the value of administrative expense claims rises (due to the Debtor's parents' postpetition loans), so too would the need for additional funding of the Debtor's plan. As the funding from the Debtor's parents (as the Debtor's sole source of income) increases, so too would the amount of priority claims that must be paid in full. Ultimately, the proposed plan funding scheme could not sufficiently fund the Debtor's plan without some priority claim holders accepting payment of less than their entire claim, which the Court has no reason to believe would happen here. Congress intended § 101(30) to encompass broad and varied sources of income for a court to consider when determining a debtor's eligibility under Chapter 13. However, it defies logic that Congress intended to include loans that, by definition, constitute administrative expense claims that would dilute or altogether eliminate dividends to other creditors. Accordingly, the Debtor's parents' contributions, if classified as loans, cannot support the Debtor's Chapter 13 eligibility as the sole source of plan funding on the Petition Date.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Debtor did not meet his burden to prove by a preponderance of evidence that he had income sufficiently stable and regular to make him an "individual with regular income." Thus, the Debtor fails to meet the eligibility requirements for Chapter 13 under § 109(e). Accordingly, the Motion to Dismiss is granted. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with

Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

    ENTERED at Concord, New Hampshire.

Date:  May 17, 2024                      /s/ Bruce A. Harwood
                                                        Bruce A. Harwood
                                                        Chief Bankruptcy Judge